UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MARCUS E. JACKSON,

                    Petitioner,

v.                                   Case No. 3:09-cv-18-J-34MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____


**ORDER**

**I. Status**

    Petitioner Jackson initiated this action by filing a <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on December 1, 2008, pursuant to the mailbox rule. He challenges a 2003 state court (Duval County, Florida) judgment of conviction for second degree murder and attempted first degree murder on five grounds. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Respondents' Response to Habeas Petition (Response) (Doc. #16); Exhibits (Resp. Ex.) (Doc. #18). On March 4, 2009, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #9), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. On June 27, 2011, Petitioner notified the Court that he does not intend to reply, but will rely on the grounds, as

asserted in the Petition.  <u>See</u> Petitioner's Reply to Respondents'
Response (Doc. #22).  This case is ripe for review.

## II. Procedural History

On March 20, 2003, the State of Florida charged Marcus Elliott
Jackson with first degree murder, attempted first degree murder
(three counts), and shooting at, within, or into an occupied
vehicle.  Resp. Ex. C, Indictment.  Jackson entered a negotiated
plea of guilty to second degree murder and attempted first degree
murder in exchange for a sentence between twenty and forty years of
imprisonment with a twenty-year minimum mandatory sentence under
the 10/20/life statute.[1]  As part of the plea, Jackson agreed to
"give truthful testimony in any future deposition, hearing, or
trial regarding the facts of this case."  Accordingly, Jackson gave
a statement to the State Attorney's Office on May 29, 2003, <u>see</u>
Resp. Ex. J at 258-67, deposition testimony on July 24, 2003, and
then testified at the August 2003 trial of co-defendant John
Patterson, <u>see</u> Resp. Ex. L, Transcript of the Trial of Co-Defendant
John Patterson (Tr.), at 389-482.

At the May 29, 2003 plea hearing, the trial judge found
Jackson's plea to be freely and voluntarily entered.  Resp. Ex. J
at 122-37, Transcript of the Plea Proceeding (Plea Tr.).  On
September 18, 2003, the trial court sentenced Jackson to forty
years of imprisonment on count one with a twenty-year minimum

---

[1] <u>See</u> Fla. Stat. § 775.087 (2000).

mandatory for discharge of the firearm and fifteen years of imprisonment on count two, to run concurrently to count one. Resp. Ex. J at 138-249. On December 15, 2003, at the request of the State and the defense due to Jackson's cooperation with the State, the trial judge reduced Jackson's sentence on count one to twenty-five years of imprisonment with a twenty-year minimum mandatory. <u>Id</u>. at 250-56; Resp. Exs. G; H, Judgment. Jackson did not appeal.

On January 16, 2004, the court entered an order quashing and striking a December 31, 2003 motion for post conviction relief and a January 7, 2004 motion to correct illegal sentence since Jackson had failed to sign them. <u>See</u> Resp. Ex. I. Jackson filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on February 11, 2004. Resp. Ex. J at 1-13. Subsequently, Jackson amended the post conviction motion and then filed the final amended motion (Rule 3.850 motion) on July 6, 2006, pursuant to the mailbox rule. <u>Id</u>. at 14-33, 34-47, 48-89. In the request for post conviction relief, Jackson asserted that his counsel was ineffective because she: failed to object to the trial court's failure to formally accept Jackson's plea (ground one); induced Jackson to accept the plea when the State's factual basis was inadequate to support the convictions (ground two); failed to fulfill her promise that Jackson would receive a twenty-year sentence in exchange for a negotiated guilty plea (ground three); failed to communicate with Jackson and comply with his

request for information and potential defenses for trial (ground four); and misinterpreted the law and failed to request that Jackson be sentenced as a youthful offender under Florida law (ground five). On December 4, 2007, the circuit court denied Jackson's Rule 3.850 motion. <u>Id</u>. at 106-21.

Jackson appealed the denial, but did not file a brief. Resp. Ex. M. On June 17, 2008, the appellate court affirmed the denial per curiam, <u>see</u> <u>Jackson v. State</u>, 987 So.2d 82 (Fla. 1st DCA 2008); Resp. Ex. K, and the mandate issued on August 19, 2008, <u>see</u> Resp. Ex. K.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. <u>See</u> 28 U.S.C. § 2244(d); Response at 3-4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess

[Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district

> court's conclusion regarding the
> reasonableness of the state court's
> application of federal law.
>
> Jennings v. McDonough, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted). In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." Williams, 529
> U.S. at 409, 120 S.Ct. at 1521. Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[2]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir.), cert. denied, 131
S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770,
785 (2011) (holding that § 2254(d) does not require a state court
to give reasons before its decision can be deemed to have been
adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr.,

---

[2] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.[3] A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." <u>Id</u>., at 687, 104
S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance

claims concerning both the decision to accept a guilty plea offer

and the decision to forgo a plea offer and stand trial. <u>Hill v.

Lockhart</u>, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-

part <u>Strickland</u> test must be satisfied to show a Sixth Amendment

violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>,

592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s

high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788

(quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is

accorded great deference. "The standards created by <u>Strickland</u> and

§ 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104

S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct.

---

[3] In the context of an ineffective assistance challenge to the
voluntariness of a guilty or no contest plea, Petitioner must show
there is a "reasonable probability that, but for counsel's errors,
he would not have pleaded guilty and would have insisted on going
to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,

review is 'doubly' so, <u>Knowles</u>[4], 556 U.S., at ----, 129 S.Ct. at

1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the <u>Strickland</u> standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
> 1933. And, because the <u>Strickland</u> standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see also</u>

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In

addition to the deference to counsel's performance mandated by

<u>Strickland</u>, the AEDPA adds another layer of deference--this one to

a state court's decision--when we are considering whether to grant

federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Jackson claims counsel was ineffective because

she failed to object to the trial court's failure to formally

accept Jackson's plea. As acknowledged by the parties, Petitioner

---

[4] <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009).

raised this ground in his Rule 3.850 motion. Ultimately, the court denied the motion on the merits as to this claim, stating in pertinent part:

> The defendant pled guilty to one count of Second Degree Murder and one count of Attempted First Degree Murder on May 29, 2003. The negotiations were for a minimum of twenty years and a maximum of forty years imprisonment, to run concurrently, with twenty years being treated as a minimum mandatory under the 10-20-Life statute. The defendant and his co-defendant pled guilty to murdering a twenty-three year old Marine Sergeant home on leave from the war on terror.
>
> Subsequently, the defendant and his co-defendant cooperated with the State and testified against a third co-defendant who was the actual shooter in the death of the Marine Sergeant. Because of their conduct in this phase of the litigation, and because of the victim's family's recommendations, this defendant and his co-defendant were back in court on December 15, 2003, whereupon the Court granted [a] Motion for Reduction of Sentence on both defendants, following the recommendation of the State. The defendant was resentenced to twenty-five years imprisonment with a minimum mandatory twenty year term at this time. The defendant was represented throughout these proceedings by Judy Groover, Esquire. No evidentiary hearing can be held regarding communications between the defendant and his court-appointed counsel, because Ms. Groover has conveniently (for the defendant), but tragically and prematurely died at a very young age.
>
> Fortunately, for the sake of justice and in the interest of a fair, lawful, and correct conclusion to this litigation, all of the allegations of the motion are conclusively refuted by the record herein, the majority of which is comprised of the defendant's own sworn statements under oath. The defendant

testified under oath at his plea hearing,[5] his sentencing hearing,[6] and his resentencing hearing. He also gave a sworn statement, a deposition, and testimony in the case of the State of Florida v. John Patterson, the third co-defendant. His own sworn words, <u>inter alia</u>, conclusively refute every allegation in the motion.

In Ground I, the defendant alleges ineffective assistance of counsel for failing to object to the trial court's failure to formally accept the defendant's plea of guilty. The transcript of court proceedings on May 29, 2003, reveal that the judge who accepted the defendant's plea conducted a complete, thorough, and exhaust[ive] plea inquiry which is memorialized on pages 6-15 of the transcript of May 29, 2003. A copy of this plea colloquy is attached hereto as Exhibit "A". At the conclusion of this exhaustive plea colloquy, the Court made the following findings:

"Based on the questions asked and responses given the Court finds the defendant has the intelligence to understand his constitutional rights, the plea he's entered, the plea agreement form he's executed, and these proceedings.

I further find the plea has been entered freely and voluntarily and the defendant is not under the influence of any substances or suffers from any mental illness that would interfere with his understanding and appreciation of the plea he's entered and the consequences thereof." (T p. 15.)

---

[5] <u>See</u> Plea Tr.

[6] <u>See</u> Resp. Ex. J at 202-05.

The Court, based upon diligent inquiry, made all of the findings required by Florida Rules of Criminal Procedure 3.170(k)(1), (2), and (3), and 3.172(a), (b), (c)(1), (2), (3), (4), (5), (6), (7), (8), and (9). (d) was not in the rule at the time of entry of this plea. The Court also made the requisite findings of (e) of this Rule.

These inquiries and findings are the mandatory requirements of rules concerning accepting guilty pleas. There is no specific requirement that the judge state the words "I accept the plea of guilty." No magic words are required; the rule simply sets forth that until the judge does accept the defendant's plea of guilty, it is not binding, and may be withdrawn by either party without any necessary justification. Here, the judge clearly went through the complete required colloquy of questions, answers and findings. Also, clearly here, the judge satisfied himself as to the findings and accepted the defendant's plea, because he ordered a Pre-Sentence Investigation Report and set the case for a sentencing hearing. Further, the Court, on the appointed date, conducted the sentencing hearing and sentenced the defendant on these pleas. No magic words were used, but none are required. Had the defendant chosen to withdraw his plea at any time up until his sentencing, he could have under this rule. However, he did not. He also never requested to withdraw his plea at or before the second sentencing hearing, which was not conducted until December 15, 2003. At no time was the issue of the defendant wanting to go to trial ever raised on this record. Certainly a record indicates that a court has accepted a guilty plea when the court has sentenced the defendant twice on that same guilty plea.

Further, the rule itself states that failure to follow any of the procedures set forth in the rule shall not render a plea void absent a showing of prejudice. Florida Rules of Criminal Procedure 3.1720(j). No prejudice

>           is demonstrated or even mentioned in the
>           motion.
>
>           Ground I is conclusively refuted by the
>           record herein.

Resp. Ex. J at 106-09. Upon Jackson's appeal, the appellate court

affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule

3.850 motion on the merits, there are qualifying state court

decisions. Therefore, this claim will be addressed applying the

deferential standard for federal court review of state court

adjudications required by AEDPA. After a thorough review of the

record and the applicable law, the Court concludes that the state

courts' adjudications of this claim were not contrary to clearly

established federal law and did not involve an unreasonable

application of clearly established federal law. Nor were the

adjudications based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceedings.

Thus, Petitioner is not entitled to relief on the basis of this

claim.

Alternatively, if the state courts' adjudications of this

claim are not entitled to deference under AEDPA, Petitioner's claim

is, nevertheless, without merit. The record fully supports the

trial court's findings. In evaluating the performance prong of the

Strickland ineffectiveness inquiry, there is a strong presumption

in favor of competence. The inquiry is "whether, in light of all

13

the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

Jackson has failed to establish that counsel's performance was deficient by not objecting to the trial court's failure to formally accept Jackson's plea. The transcript of the May 29, 2003 plea hearing reflects that the judge conducted a thorough inquiry to ensure that Jackson understood his options and freely, intelligently and voluntarily entered the guilty plea. See Plea Tr. at 6-15. At the conclusion of the plea colloquy, the court found that Jackson "has the intelligence to understand his constitutional rights, the plea he [has] entered, the plea agreement form he [has] executed, and these proceedings." Id. at 15. Additionally, the court concluded that Jackson entered the plea "freely and voluntarily" and neither was under the influence of any substances nor suffered from any mental illness that would interfere with his understanding and appreciation of the plea and

its consequences.  Id.  Given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  Petitioner acknowledged that he pled guilty because he was in fact guilty.  Additionally, Jackson testified under oath, at co-defendant Patterson's trial, that he had bought a nine millimeter automatic gun a few days before the shooting, decided to bring the gun and store it underneath the driver's seat of his car that night, and then fired six shots into a neighboring vehicle; he also saw co-defendant Patterson bring a .380 gun and co-defendant Ward bring a sawed-off shotgun to his car.  Tr. at 394-96, 408-09, 456-63.  Undoubtedly, the State's evidence against Jackson was overwhelming.  Notably, a jury found his co-defendant Patterson guilty of second degree murder and three counts of attempted second degree murder, for which Patterson is now serving life imprisonment.

As part of the plea negotiations, the State agreed to a reduced charge of second degree murder (count one), a concurrent sentence on count two, and a sentence between twenty and forty years of imprisonment.  The State also agreed to enter a nolle prosequi as to two counts of attempted first degree murder (counts three and

four) and shooting at, within, or into an occupied vehicle (count five).  See Resp. Exs. C, Indictment; D, Plea of Guilty and Negotiated Sentence.  If Jackson had proceeded to a trial and the jury had found him guilty of the original charges (first degree murder, three counts of attempted first degree murder, and shooting at, within, or into an occupied vehicle), he would have faced a term of life imprisonment.[7]  However, due to Jackson entering a guilty plea as well as cooperating with the State in the prosecution of co-defendant Patterson and persuading co-defendant Ward to enter a guilty plea, the trial judge ultimately sentenced Jackson to twenty-five years of imprisonment for the second degree murder charge (with a twenty-year minimum mandatory sentence)[8] and fifteen years of

---

[7] After a jury found co-defendant John Patterson guilty of second degree murder (count one) and three counts of attempted second degree murder, the trial judge sentenced Patterson to life imprisonment on count one and fifteen-year terms of imprisonment for the remaining three counts, to run concurrently to count one. Resp. Ex. J at 245-46; see http://www.dc.state.fl.us/ActiveInmates. After co-defendant DeWayne Ward entered a guilty plea, the trial judge sentenced him to the same terms of imprisonment as Jackson: twenty-five years of imprisonment for second degree murder (count one) with a twenty-year minimum mandatory for discharge of the firearm and fifteen years of imprisonment for attempted first degree murder, to run concurrently to count one.  Id. at 255-56.

[8] Under the 10/20/life provision of Florida Statutes § 775.087 (2000), possession of a firearm carries a ten-year minimum mandatory sentence, discharging a firearm imposes a twenty-year minimum mandatory sentence, and discharging a firearm resulting in death or great bodily harm to any person carries a minimum mandatory sentence of twenty-five years to life imprisonment. However, as part of the plea agreement, the State agreed not to seek the twenty-five years to life minimum mandatory sentence, but agreed to a twenty-year minimum mandatory sentence for discharge of the firearm.  See Resp. Ex. D, Plea of Guilty and Negotiated

imprisonment for one count of attempted first degree murder, to run concurrently to count one. Accordingly, Jackson has an estimated release date in 2027. <u>See</u> http:///www.dc.state.fl.us/ActiveInmates (current estimated release date). Therefore, Jackson's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## **B. Ground Two**

As ground two, Petitioner claims counsel was ineffective because she induced him to enter a plea to an offense that he did not commit and for which the State had not provided a sufficient factual basis. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. The court ultimately denied the motion on the merits as to this claim, stating in pertinent part:

> In Ground II, the defendant complains of ineffective assistance of counsel for inducing the defendant to enter a plea of guilty. During the plea colloquy, the defendant made the following statements under oath:
>
>> "THE COURT: Has anybody threatened, coerced or intimidated you in any way to get you to plead guilty?
>>
>> DEFENDANT JACKSON: No, Sir." (T pp. 7-8.)
>>
>> "THE COURT: Mr. Jackson, you understand by pleading guilty you're admitting your [sic] guilty to those facts and that the State can prove

Sentence; Plea Tr. at 125-26.

beyond a reasonable doubt that you're guilty of this offense?

DEFENDANT JACKSON: Yes, sir." (T p. 10.)

"THE COURT: Now, have you had sufficient time to discuss this case with your counsel - -

DEFENDANT JACKSON: Yes, sir.

THE COURT: - - Miss Groover? Have you told her everything you know about your case?

DEFENDANT JACKSON: Yes, sir.

THE COURT: And has she answered all questions that you have put to her about your case?

DEFENDANT JACKSON: Yes, sir.

THE COURT: And at least to this point in the proceedings you're satisfied with the services she's rendered on your behalf?

DEFENDANT JACKSON: Yes, sir." (T pp. 12-13.)

In this ground, the defendant states that he told his counsel he was innocent of these crimes and wanted to go to trial. However, this perjurous statement is repeatedly and conclusively refuted by the record herein. The defendant under oath gave a sworn statement to the State Attorney's Office on May 29, 2003. In this sworn statement (attached hereto as Exhibit "B"), the defendant twice promised to tell the truth:

"Have you discussed your sworn statement with your attorney this morning?

A    Yes, sir.

18

Q     And do you agree to tell the truth today?

A     Yes, sir." (Stmt. p. 5.)

"Q    So now you've been sworn to tell the truth and you agree to tell the truth in response to my questions?

A     Yes, sir.

      MS. GROOVER: And everything that you said previously was the truth?

      THE DEFENDANT: Yes." (Stmt. p. 6.)

"Q    Were shots fired from your vehicle into the silver Mercedes vehicle that the young men were inside?

A     Yes, sir.

Q     And at the time the shots were fired was your car parked next to the silver Mercedes?

A     Yes, sir.

Q     And you were still the driver at that point?

A     Yes, sir.

Q     **Do you know who fired shots from inside your vehicle?**

A     Yes, sir.

Q     Who was that?

A     **I did, Dwayne Ward, and John Patterson.**

Q     And where were you seated in the vehicle?

A    In the driver's seat." (Stmt. pp. 8-9.)

"Q   And what weapons were fired into the silver Mercedes from your Dodge Intrepid?

A    Nine millimeter, .380, and a shotgun.

Q   **And who fired the nine millimeter?**

A    **I did.**

Q   And who fired the .380?

A    John.

Q   John Patterson?

A    Yes, sir.

Q   And who fired the shotgun?

A    Dwayne Ward." (Stmt. p. 9.)

Subsequently, the defendant gave a deposition in the case of the State of Florida v. John Patterson, and testified consistently with that deposition during the trial of John Patterson. This deposition was taken on July 24, 2003, before Court Reporter M. Kim Simms, with Mose Floyd, Esquire, Frank Tassone, Esquire, Judy Groover, Esquire, Amanda Estabrook, Esquire, and Adam Sichta, Esquire, present. The defendant gave the following testimony under oath:

"Q   At the time you left your house, were there any weapons in your car?

A    Yes.

Q   What was in your car?

A    A 9-millimeter.

Q    And who did that 9-millimeter belong to?

A    Me.

Q    Where was the weapon in the car?

A    Under the driver's seat.

Q    How long had it been in the car?

A    About three or four days.

Q    Where did it come from?

A    I bought it from somebody.

Q    Do you know who you bought it from?

A    I don't know him, no, sir.

Q    Somebody you met on the street?

A    Yes.

Q    And did it come with shells too?

A    Yes.

Q    Was it loaded?

A    No, not at the time. Not when I bought it.

Q    Not at the time - - you bought it, it was not loaded?

A    No, sir.

Q    Did you ever load it from the -

A    Yes.

Q    - - the time you bought it until your graduation?

A    Yes.

Q    Do you remember the make of the 9-millimeter?

A    No, sir.

Q    How many did it hold in the clip?

A    I think about six or seven.

Q    And then one in the chamber?

A    I'm not sure.

Q    Did you load it yourself?

A    Yes," (Depo. pp. 15-16.)

"Q    When you picked up - - when you went to DeWayne's house, did DeWayne put any weapons in the car?

A    Yes.

Q    Was that with your consent? That is, did you agree to it?

A    He didn't ask really, he just brought it.

Q    And what did he bring?

A    A shotgun.

Q    A sawed-off shotgun?

A    Yes.

Q    Where did he put that sawed-off shotgun?

A    In the trunk.

Q    And you had to open the trunk, didn't you?

A    Yes," (Depo. p, 27.)

"Q    What happens next?

A     Then I think that's when I had
got the 9 from under the seat and
then John got the .380 then.

Q     Well, you're getting armed, what
are you getting armed for?  These are
supposed to be friendly people you're
going to meet, right?

A     Yes.

Q     So why - - I mean, do you always
pull out a gun when your friends meet
you?

A     No.

Q     Why did you pull out a gun this
time?

A     I don't know.

Q     Was there any discussion that
you guys were in any danger?

A     No, sir.

Q     Did someone threaten you?

A     No, sir.

Q     And, sir, even as we sit here
today, you don't know why you got out
your weapon?

A     No, sir," (Depo. p. 45.)

"Q    So, it's pretty much you guys
can talk and both cars can hear what
the other car is saying, right?

A     Yes.

Q     So, Wayne says something to
Brionne?

A    Uh-huh.

Q    Is Wayne the first person to
speak or is Brionne?

A    Wayne.

Q    And he says what?

A    He said, what's up now?

Q    Okay. Does Brionne answer?

A    Yeah. He said, it's whatever."
(Depo. p. 50.)

"A    And like, he threw his hands up
and saying like, it's whatever.

Q    Did that mean anything to you?

A    Like, after that, **like Wayne had
fired the first shot and then me and
John started shooting.**

Q    My question is this: If I'm
sitting on a car and you ask me a
question, what's going, and I answer,
whatever, is that, like this, and I
raise my hand as you described, is
that a threatening gesture to you?

A    No.

Q    Did you feel in fear when you
were next to that car?

A    No.

Q    Were you comfortable being next
to that car?

A    I wouldn't say comfortable.

Q    Was anybody in that car the person who hit you?

A    No.

Q    Was anybody in that car a friend of the person who hit you?

A    Yes.

Q    Who?

A    All of them.

Q    How do you know that?

A    They were all together in the club.

Q    Okay. So after Wayne throws up his hands and says whatever?

A    Brionne.

Q    I'm sorry, Brionne, you're correct. What happens next?

A    **Wayne fired the first shot and then me and John started shooting.**

Q    So, Wayne fires, does he fire directly out the window?

A    Yes.

Q    He doesn't get out of the car?

A    No.

Q    All right.  And then who fired -- and he fires one shotgun blast or more?

A    One.

Q    Then who fires next?

A    **Like me and John, we fired like
at the same time.**

Q    Where do you fire, through the
front passenger window or the back
window or what?

A    Front. Front passenger window.

Q    And where does - - where does -
- where does John fire from?

A    The front passenger window.

Q    Do you leave your seat?

A    No.

Q    Do you even stretch?

A    Stretch my arm?

Q    Yes, sir.

A    Yes, sir." (Depo. pp. 51-53.)

"Q    **And how many shots do you fire?**

A    **I think about six or seven.**

Q    And what are you firing - - who
are you firing at or what are you
firing at?

A    At the car." (Depo. p. 54.)

As a part of this deposition, the
defendant made a drawing of his car, showing
the positions of himself and the other four
occupants at the time of the shooting.
(Attached hereto as Exhibit "C".) The
defendant's testimony at the trial of Mr.

> > Patterson mirrored his testimony on this
> > deposition.
>
> > Clearly, the truth of the matter is that
> > the defendant was not innocent, and was eager
> > to plead guilty, help the State prosecute his
> > co-defendant, and get a lesser sentence for
> > himself. Only after the untimely death of Ms.
> > Groover does he suddenly proclaim his
> > innocence. Ground II is conclusively refuted by
> > the record herein, principally by the
> > defendant's own sworn statements.

Resp. Ex. J at 109-17 (emphasis added).  On appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of Petitioner's post conviction motion as to this claim on the merits, there are qualifying state court decisions.  Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  Following a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Moreover, assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  Petitioner has failed to establish that counsel's

performance was deficient. The plea transcript is instructive and reflects the voluntary, non-coercive nature of Jackson's guilty plea. Jackson affirmed that no one had threatened, coerced or intimidated him to persuade him to plead guilty. Plea Tr. at 127-28. Upon request by the trial judge, the State provided the following factual basis for the guilty plea:

> Your Honor, had the matter proceeded to trial the State would have proven beyond a reasonable doubt that on the 23rd of May, 2002, in the county of Duval and in the state of Florida that Marcus Jackson did unlawfully by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, kill Timotheus Stamper, a human being, by shooting the said Timotheus Stamper, and during the commission of the aforementioned second degree murder the said Marcus Jackson did discharge a firearm, as a result of the discharge death or great bodily harm was inflicted upon any person contrary to provisions of section[s] 782.04(1)(a) and 7[75].087, that's as to Count I the lesser included.

> As to Count II, the State would have proven Marcus Jackson on the 23rd of May, 2002, in the county of Duval and State of Florida did attempt to unlawfully kill Tremayne Stamper, a human being, by shooting the said Tremayne Stamper with a shotgun -- with a gun, with a premeditated design to effect the death of Tremayne Stamper, a human being, and during the commission of the aforesaid attempted first degree murder, the said Marcus Jackson did discharge a firearm and as a result of the discharge death or great bodily harm was inflicted upon any person, contrary to the provisions of section[s] 782.04(1)(a) and 777.01 and 775.087 Florida Statutes.

Id. at 129-30.  Jackson acknowledged that he understood that, by pleading guilty, he admitted he was guilty of the above-cited facts and that the State could prove beyond a reasonable doubt that he was guilty of the offenses.  Id. at 130.  Moreover, Jackson confirmed that he understood that, by pleading guilty, he was giving up his right to proceed to trial and require the State to prove his guilt beyond a reasonable doubt.  Id. at 133-34.

When the trial judge inquired as to counsel's representation, Jackson affirmed that he was satisfied with her representation.  Id. at 132-33.  At the plea hearing, counsel clarified Jackson's involvement in the crimes, stating: "He's charged as a principal to Count I to second degree murder.  His gun did not cause the person's death but he is a principal in the matter, that's all I wanted to make clear."  Id. at 131.  Given the record and Jackson's answers to the trial judge's inquiries, there was no coercion on the part of counsel.  Notably, at the September 18, 2003 sentencing hearing, the trial judge complimented counsel on her representation of Jackson, stating that she, along with other defense counsel, was "a credit to our profession . . . ."  Resp. Ex. J at 243.  Based on the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense
counsel, Petitioner has not shown prejudice.[9] Jackson acknowledged
that he pled guilty because he was in fact guilty of the offenses.
Additionally, as previously discussed, the State's evidence against
Jackson was substantial and included witnesses who had observed
Jackson shooting into the other vehicle. In Jackson's May 29, 2003
sworn statement to the State Attorney's Office (see Resp. Ex. J at
265-66), his July 24, 2003 deposition, and his August 19, 2003
testimony at co-defendant Patterson's trial (Tr. at 408-09, 456),
Jackson admitted that he had fired shots with a nine millimeter gun
at the neighboring vehicle. If Jackson had proceeded to a trial and
the jury had found him guilty of either first degree or second
degree murder, he would have faced a term of life imprisonment as
well as the State's prosecution on three counts of attempted first
degree murder and shooting at, within, or into an occupied vehicle.
Therefore, Jackson's ineffectiveness claim is without merit since
he has shown neither deficient performance nor resulting prejudice.

### C. Ground Three

As ground three, Petitioner claims counsel was ineffective
because she coerced him to enter the guilty plea and failed to
fulfill her promise that Jackson would receive a twenty-year

---

[9] See Hill, 474 U.S. at 59 (requiring that petitioner show a
"reasonable probability that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to
trial").

sentence. Petitioner raised this ground in his Rule 3.850 motion. Ultimately, the post conviction court denied the motion on the merits with respect to this claim, stating in pertinent part:

> Ground III complains of ineffective assistance of counsel by coercing the defendant to plead and failing to fulfill a promise that the defendant would receive a twenty-year sentence. During the plea colloquy, the Court asked the defendant the following question and received the following answer:
>
> > "THE COURT: You understand, though, Mr. Jackson, **I'm still going to sentence you somewhere between 20 and 40, you understand that?**
> >
> > DEFENDANT JACKSON: Yes, sir." (T p. 12.)
>
> The Court had previously advised the defendant and received the following sworn responses:
>
> > "THE COURT: Your counsel has entered pleas of guilty on your behalf to the two offenses, the first is the crime of second degree murder which carries normally because a firearm was involved - - is he alleged to be a shooter?
> >
> > MR. FLOYD: Yes, Your Honor.
> >
> > THE COURT: Okay. A minimum mandatory of 25 years up to life imprisonment. And in the second count of attempted first degree murder it requires a sentence of what, Mr. Floyd?
> >
> > MR. FLOYD: That would be 20 to life, Your Honor, 20 year minimum mandatory.
> >
> > THE COURT: On attempted first degree which also carries a minimum

mandatory sentence of 25 years up to
life imprisonment, **but because there
is a plea agreement I have agreed
that your sentence will not be less
than 20 years nor more than 40 years
incarceration,** do you understand
that?

DEFENDANT JACKSON: Yes, sir." (T p.
7.)

"THE COURT: Has anybody promised you
[that] you would receive any
particular sentence in this case
other than **somewhere between 20 and
40 years?**

DEFENDANT JACKSON: No, sir." (T p.
8.)

The record is abundantly clear that the
defendant's own sworn answers to the Court
indicate that he informed the judge that he
knew he could receive a sentence anywhere from
twenty years imprisonment to forty years
imprisonment. The issue involving coercion by
his counsel has already been exhaustively
covered in Ground II. Ground III is
conclusively refuted by the record herein.

Resp. Ex. J at 117-19 (emphasis added). Upon Jackson's appeal, the

appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of

Petitioner's post conviction motion as to this claim on the merits,

there are qualifying state court decisions. Thus, this claim will

be addressed applying the deferential standard for federal court

review of state court adjudications. Following a review of the

record and the applicable law, the Court concludes that the state

courts' adjudications of this claim were not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. Given the record, counsel's performance was within the wide range of professionally competent assistance. At no time did Jackson indicate that he believed the agreement was for anything other than a twenty to forty-year range. In fact, the plea agreement and the plea hearing reflect that he fully understood the agreement, and the trial judge confirmed that Jackson understood the terms of the plea agreement and that he could sentence him within that range. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. See Hill, 474 U.S. at 59. Therefore, Jackson's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### D. Ground Four

As ground four, Petitioner claims that counsel was ineffective because she failed to communicate with him. Petitioner raised this ground in his Rule 3.850 motion, and the post conviction court

ultimately denied the motion on the merits as to this claim, stating in pertinent part:

> In Ground IV the motion alleges ineffective assistance of counsel for failure to communicate with the defendant. Again, this allegation is conclusively refuted by the defendant's sworn answers to the judge during the plea colloquy:
>
>> "THE COURT: Now, have you had sufficient time to discuss this case with your counsel - -
>>
>> DEFENDANT JACKSON: Yes, sir.
>>
>> THE COURT: - - Miss Groover? Have you told her everything you know about your case?
>>
>> DEFENDANT JACKSON: Yes, sir.
>>
>> THE COURT: And has she answered all questions that you have put to her about your case?
>>
>> DEFENDANT JACKSON: Yes, sir.
>>
>> THE COURT: And at least to this point in the proceedings you're satisfied with the services she's rendered on your behalf?
>>
>> DEFENDANT JACKSON: Yes, sir." (T pp. 12-13.)
>
> Ground IV is conclusively refuted by the record herein.

Resp. Ex. J at 119. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion on the merits, there are qualifying state court

decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. Petitioner has failed to establish that counsel's performance was deficient in the investigation and preparation for trial. Petitioner has not alleged any particular investigative tactic that trial counsel should have conducted that would have resulted in a different outcome. Additionally, Jackson has not asserted how further communications with counsel and additional visits to the jail would have resulted in a different outcome.

Moreover, as previously stated, the evidence against Jackson was substantial. Jackson acknowledged that he bought the gun and ammunition a few days before the shooting and decided to bring the gun with him in his car that evening. Tr. at 395-96. He also

admitted that he knew his cousin (co-defendant DeWayne Ward) had placed a sawed-off shotgun in the trunk of Jackson's car and then, later in the evening, retrieved it and moved it into the passenger compartment of the car.  Id. at 394, 441-42, 456-57.  Jackson also stated that he saw co-defendant Patterson bring a gun into the car that night and place it underneath the front passenger seat.  Id. at 394-95.  Moreover, Greg Almon, who was riding in the backseat of Jackson's car, testified that Jackson celebrated the kill after the shooting.  Id. at 940-41.  Counsel's performance was within the wide range of professionally competent assistance.[10]  Even assuming arguendo deficient performance by defense counsel, given the strong evidence of guilt, Petitioner has not shown prejudice.  See Hill, 474 U.S. at 59.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### E. Ground Five

As ground five, Petitioner claims that counsel was ineffective because she failed to request that the trial court sentence Jackson as a youthful offender.  As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion.  The court ultimately

---

[10] The trial judge complimented counsel, the prosecutors, and other defense attorneys on their diligence and hard work in what he described as "an extremely difficult case" and "[p]robably the hardest case" he has seen in his thirty years on the bench.  Resp. Ex. J at 242, 243.

denied the motion on the merits as to this claim, stating in pertinent part:

> In Ground V, the defendant complains of ineffective assistance of counsel for failure to request that the defendant be sentenced as a youthful offender. This contention is not only conclusively refuted by the record herein, but by any application of common sense and reason. The defendant and his co-defendants were charged with murdering a 23 year old Marine Corps Sergeant home on leave and attempting to murder his cousin, by firing three firearms at them from a distance of approximately eight feet in the parking lot of an Amoco station crowded with students celebrating their graduation from high school. The defendant was subject to Florida Statute 775.087(2)(a)2, the so-called "10-20-Life statute." **This statute disqualifies the defendant for a youthful offender sentence.** The defendant's contention through his bare allegation that, if his counsel had asked the judge to give him a youthful offender sentence, he probably would have, is preposterous. The defendant actually fired seven shots into a car full of teenagers. Such a sentence would not only have violated Florida Statute 775.087(2)(a)2, it defies common sense to think that such a proposal would have been accepted by the State or the judge in light of the horrendous nature of the defendant's criminal conduct. Ground V is conclusively refuted by the record herein and by all common sense and logic.

Resp. Ex. J at 119-20 (emphasis added). Upon Jackson's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court

adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. Petitioner has failed to establish that counsel's performance was deficient for not requesting youthful offender sentencing. With the seriousness of the charges (first degree murder, three counts of attempted first degree murder, and shooting at, within, or into an occupied vehicle), counsel worked diligently with the State to negotiate a plea agreement and sentencing range of twenty to forty years of incarceration. See Resp. Ex. D. Thus, in accordance with the plea agreement, Jackson entered a guilty plea to second degree murder (count one, a reduced charge) and attempted first degree murder (count two), and the State dropped the remaining charges (counts three, four, and five). Resp. Exs. C, Indictment; D, Plea of Guilty and Negotiated Sentence; H, Judgment.

Second degree murder is a first degree felony punishable by imprisonment for a term of years not exceeding life, <u>see</u> Fla. Stat. § 782.04(2); however, because Jackson used a firearm during the commission of the offense, the offense was reclassified as a life felony, <u>see</u> Fla. Stat. § 775.087(1)(a); <u>Robinson v. State</u>, 37 So.3d 921 (Fla. 2nd DCA 2010). Additionally, section 782.04(1)(a) states that first degree murder "constitutes a capital felony . . . ." Section 777.04(4)(b) provides that, if the crime that is attempted is classified as a capital felony, then the attempted crime is a felony of the first degree. And, with the use of a firearm, the first degree felony (attempted first degree murder) is reclassified as a life felony pursuant to section 775.087(1)(a). <u>See</u> <u>Malone v. State</u>, 50 So.3d 60, 61 (Fla. 2nd DCA 2010) ("We find the trial court erred in sentencing Malone to six years' prison as a youthful offender because Malone pleaded no contest to a life felony [(attempted first degree murder with use of a firearm)], making him ineligible for youthful offender sentence."); <u>McKinney v. State</u>, 27 So.3d 160, 161 (Fla. 1st DCA 2010) ("The trial court has discretion to sentence as a youthful offender a defendant who is at least 18 years old and has been found guilty of a felony (except for a capital or life felony) committed before the defendant's 21st birthday.").

Moreover, section 958.04(1)(c) provides that "a person who has been found guilty of a capital or life felony may not be sentenced

as a youthful offender under this act." Thus, since Jackson entered a plea of guilty to life felonies, counsel's performance was within the wide range of professionally competent assistance when she failed to request youthful offender sentencing. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. <u>See</u> <u>Hill</u>, 474 U.S. at 59. Therefore, Jackson's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. <u>Knowles</u>, 129 S.Ct at 1420. In the alternative, Petitioner's claims are without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this

substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of October, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 10/11
c:
Marcus E. Jackson
Ass't Attorney General (Hill)